# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARK FANSLER and LINDA GOLDSTEIN,

    Plaintiffs,

v.

NORTH AMERICAN TITLE INSURANCE COMPANY, R. MATTHEW LONGO, LONGO & ASSOCIATES, L.P., RICHARD M. LONGO, HILLCREST ASSOCIATES, INC. and GLOBAL TITLE, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N17C-09-015 EMD

## MEMORANDUM OPINION DENYING DEFENDANT GLOBAL TITLE'S MOTION FOR SUMMARY JUDGMENT

Upon consideration of Defendant Global Title's Motion for Summary Judgment (the "Motion") filed by Defendant Global Title, Inc. ("Global"); Plaintiffs' Opposition to Global Title's Motion for Summary Judgment (the "Opposition") filed by Plaintiffs Mark Fansler and Linda Goldstein (collectively, "Plaintiffs"); Defendant Global Title's Reply to Plaintiffs' Response to Motion for Summary Judgment (the "Reply") file by Global; the Second Amended Complaint (the "Complaint"); and the entire record of this civil action, the Court will, for the reasons set forth below, **DENY** the Motion.

# FACTS[1]

The Complaint states a single cause of action against Global for negligent procurement of title insurance. Global is an agent of National American Title Insurance Company ("National Title. National Title issued the title insurance, North American Insurance Company Policy DE221-14-03064-01 (the "Policy").[2] The Policy is a title insurance policy issued with respect to a property located at 1805 Walnut Street, Wilmington, DE 19809 (the "Covered Premises"). According to the Complaint, Plaintiffs purchased the Covered Premises on July 25, 2014.[3] Plaintiffs allege that North American wrongfully denied coverage for a Covered Risk related to a lack of access to the Covered Premises.[4]

The Policy is dated as of July 25, 2014.[5] North American issued the Policy through its agent Global.[6] Global is a co-defendant in this civil action. The Policy provides that Plaintiffs are the named insured and that they own the Covered Premises in fee simple.[7] Schedule A of the Policy provides a legal description of the Covered Premises.[8]

The Policy provides insurance coverage for up to $117,000 for "Covered Risks."[9] A listing of the Covered Risks is contained on the first page of the Policy.[10] Some of the seemingly

---

[1] The Relevant Facts are derived from the Motion, Opposition, Reply, Complaint, North American Motion and Opposition that are incorporated by reference in this Motion and Opposition, the Memorandum Opinion Denying North American's Motion for Summary Judgment (the "Decision") issued by the Court on May 18, 2020, and the Memorandum Opinion Denying in part and Granting in part Defendant Global Title, Inc.'s Motion to Dismiss (the "Dismissal Decision") issued by the Court on March 19, 2019.

[2] 2d Am. Compl. at ¶¶ 26-35.

[3] *Id.* at ¶ 18.

[4] *Id.* at ¶¶ 26-29.

[5] North Am. Mot. at Ex. A.

[6] Decision at 2.

[7] North Am. Mot. at Ex. A.

[8] *Id.*

[9] *Id.* at Ex. A (Policy Page 1 ¶¶ 1-10).

[10] *Id.*

relevant Covered Risks are: (i) "[t]itle being vested other than as stated in Schedule A;" (ii) "[u]nmarketable title;" and (iii) "[n]o right of access to and from the Land."[11]

According to Plaintiffs, Global drafted the legal description by copying "the legal description from the deed of when seller took title . . . ."[12] The specific language of the legal description in question is:

> Together with the right, use, and privilege in common with others entitled thereto forever, including Filomena Deldeo, her heirs and assigns, of a certain 10.00 feet wide right of way adjacent to the said Northwesterly line of the former right of way of the said Railway Company and extending from the Southwesterly side of the property herein conveyed, at a width of 10.00 feet, 189.00 feet, more or less, to a point in the Northeasterly line of lands now or formerly owned by Frank P. Deldeo and Laura J. Deldeo, husband and wife.[13]

Global purportedly inserted this language even though Global knew the Covered Premises was landlocked and did not have a right of way easement.[14] Global argued that all parties knew no easement existed and no policy would have prevented Plaintiffs' damages.[15]

In addition to Cover Risks, the Policy contains "Exceptions from Coverage" in Schedule B and "Exclusions from Coverage" at page two of the Policy.[16] North American and Global rely on an Exception from Coverage and an Exclusion from Coverage.[17] The relevant Exception from Coverage, in part, provides:

> This policy does not insure against loss or damage and [North American] will not pay costs, attorneys' fees or expenses that arise by reason of:
> * * *
> 5. Any discrepancies, conflicts, shortages in area, encroachments, overlaps, boundary line disputes, party walls or other matters which would be disclosed by an accurate survey and inspection of the [Covered Premises].[18]

---

[11] The North Am. Motion failed to specify what part of the Policy is being contested as to Covered Risks, but the Court considered these three Covered Risks to be potentially relevant. Decision at 2-3.

[12] 2d Am. Compl. at ¶ 16.

[13] North Am. Mot. at Ex. A (Schedule A).

[14] 2d Am. Compl. at ¶¶ 15-16.

[15] Mot. at ¶ 9; Reply ¶ 5, Aff. of Brian Troutner.

[16] North Am. Mot. at Ex. A (Schedule B; Policy Page 2).

[17] *Id.* at ¶¶ 10-13.

[18] *Id.* at Ex. A (Schedule B).

Exclusion 3(a) and (b), from page two of the Policy, provide:

> The following matters are expressly excluded from the coverage of this policy, and [North American] will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>
> 3. Defects, liens, encumbrances, adverse claims, or other matters
> (a) created suffered, assumed, or agreed to by [Plaintiffs];
>
> (b) not Known to [North American], not recorded in the Public Records at Date of Policy, but Known to [Plaintiffs] and not disclosed in writing to [North American] by [Plaintiffs] prior to the date [Plaintiffs] became an insured under [the Policy]....;[19]

The Policy provides that Plaintiffs are to provide North American with notice in the event of any litigation, claim of title adverse to Plaintiffs' rights to the Covered Premises or title to the Covered Premises becomes "Unmarketable."[20] The Policy also provides for the means and method of the defense of title and the process of litigation.[21] In addition, Plaintiffs have a duty to cooperate with North American when there is a claim against the Covered Premises.[22]

The Agreement of Sale for the Covered Premises provides certain disclosures. Paragraph 32 of the Agreement of Sale states:

> Subject to verification of right [of way] to access property, [Plaintiffs] in house counsel believes that access has already been granted but is still subject to verification. [Mr. Fansler] has had dialogue with adjacent parcel holders to grant access should it not already been granted.[23]

On or about July 24, 2015, Plaintiffs notified North American that the Covered Premises was landlocked due to survey mistakes.[24] On September 21, 2015, Plaintiffs filed suit in the

---

[19] *Id.* at Ex. A (Policy Page 2).
[20] *Id.* at Ex. A (Policy Page 2 "Notice of Claim to be Given by Insured Claimant").
[21] *Id.* at Ex. A (Policy Page 3 "Defense and Prosecution of Actions").
[22] *Id.* at Ex. A (Policy Page 2 "Duty of Insured Claimant to Cooperate").
[23] *Id.* at Ex. B ¶ 32.
[24] *Id.* at ¶ 3.

4

Delaware Chancery Court (the "Chancery Court Action") to obtain an easement for the Covered Property.[25]

On December 1, 2015, North American denied coverage under the Policy.[26] In denying coverage, North American contended that coverage did not exist because right of access to the Covered Premises was not being challenged.[27] Plaintiffs responded to North American on May 16, 2017, contending that North American improperly denied coverage and providing notice of the Chancery Court Action.[28] On August 16, 2017, North American responded to Plaintiffs and continued to maintain that Plaintiffs' claim was not a Covered Claim under the Policy.[29]

Plaintiffs obtained an easement to the Covered Premises in the Chancery Court Action.[30]

Plaintiffs have alleged in an affidavit that they have had immense difficulty obtaining an expert willing to testify in this case regarding negligent procurement.[31] Plaintiffs seek relief from the Court of the need for an expert, should a need exist.

## PARTIES' CONTENTIONS

### GLOBAL'S CONTENTIONS

Global contends that Plaintiffs cannot establish the duty, breach, or causation elements for negligent procurement as a matter of law. Global argues that Plaintiffs need an expert to testify as to the standard of care in order to prove that Global acted negligently because Global is a professional. Additionally, Global asserts that Plaintiffs are unable to show that any other insurance policy would have prevented the harm Plaintiffs claim to have suffered. Global contends that Plaintiffs' claim is barred by the Statute of Limitations. Global argues that the

---

[25] *Id.* at ¶ 4.
[26] *Id.* at ¶ 5.
[27] *Id.*
[28] *Id.* at ¶ 6.
[29] *Id.* at ¶ 7
[30] 2d Am. Compl. at ¶ 30.
[31] Opp. at Ex. A.

5

tolling does not apply because Plaintiffs were aware of the property being landlocked at the time Global issued the Policy.

### *PLAINTIFFS' CONTENTIONS*

Plaintiffs oppose the Motion. Plaintiffs contend that no expert testimony is needed in a negligent procurement action in Delaware. As for alternate policies, Plaintiffs argue that if Global had just conveyed key and material information to North American then the Policy could have been underwritten in a manner that would have insured against the risk. Next, Plaintiffs contend that Global has merely reiterated its arguments from its Motion to Dismiss regarding the Statute of Limitations. Plaintiffs note that the Court already ruled that the Time of Discovery Rule applies in negligent procurement. The Plaintiff argues that the claim is timely because the Time of Discovery of the defective policy is when the Plaintiffs' claim had been denied on December 1, 2015.

## DISCUSSION

### *LEGAL STANDARD*

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[32] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[33] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the

---

[32] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[33] *Id.*

6

law to the factual record, then summary judgment will not be granted.[34] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[35] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[36]

*NEGLIGENT PROCUREMENT*

In *Those Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs., Inc.*,[37] the Court of Chancery set out what constitutes negligent procurement. The Court of Chancery provided that:

> [a]s a general rule, a broker or agent who, with a view to compensation for his services undertakes to procure insurance on the property of another, but fails to do so with reasonable diligence, and in the exercise of due care, or procures a void or defective policy is personally liable to his principal for any damages resulting there from.[38]

Global argues that, in order to prove negligent procurement, Plaintiffs must provide expert testimony to establish duty and breach in negligent procurement cases. Global argues that reasonable jurors will not understand terms such as "boundary survey" and will not know what a reasonable insurance agent should have done without the aid of expert testimony. Plaintiffs contend that there is no case law in Delaware establishing that expert testimony is needed for a negligent procurement claim against an insurance agent.

To rule on this issue, the Court must determine whether Global provided the type of professional services that requires expert testimony in a negligence case. Professionals are

---

[34] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[35] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[36] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[37] 2007 WL 2813774 (Del. Ch. Feb. 8, 2007).

[38] *Id*. at *6.

usually held to a heightened standard of care that requires expert testimony to prove that standard.[39] According to the Restatement (Second) of Torts, a "professional" is a party with a certain skill or other specialized knowledge. The Restatement defines "skill" as "that special form of competence which is not part of the ordinary equipment of the reasonable [person], but which is the result of acquired learning, and aptitude developed by special training and experience."[40]

Global argues that procurement of title insurance is a specialized skill that meets the definition in the Restatement. Plaintiffs argue that an expert is not necessary here because Global had a duty to follow up on a process it initiated. The Court questioned Global as to what specialized training, education, licensing or alike was necessary to be an insurance agent; however, Global was unable to respond to this with any specificity.

In *Slaubaugh Farm, Inc. Farm Family Cas. Ins. Co.*, the insurance agent argued that "the plaintiffs' allegations implicated [the agent's] affirmative duties or responsibilities beyond plaintiffs' request for insurance and, therefore, they should have offered expert testimony to establish his duty in this regard."[41] The *Slaubaugh* Court determined that "an expert is necessary to establish whether [insurance agent] had a duty to follow up on the process he initiated."[42] However, the *Slaubaugh* court denied summary judgment where the insurance agent failed to obtain an inspection so that snow-ice coverage could be added to the policy, holding that:

> The notion that [agent] can say, well, I got the inspection process started and was asked to get the blueprints, but never checked with Farm Family to see whether the inspection was done for over six months, hardly seems to me to be the exercise of reasonable care, diligence and judgment getting the Plaintiffs' snow-ice coverage.[43]

---

[39] *Small v. Super Fresh Food Mkts., Inc.*, 2010 WL 530071, at *3 (Del. Super. Feb 12, 2010).
[40] Restatement (Second) of Torts § 299A (West 2009).
[41] 2018 WL 5473033, at *4, n.14 (Del. Super. Oct. 29, 2018).
[42] *Id.*
[43] *Id.* at *4.

8

Instead of holding that expert testimony as to all claims, the *Slaubaugh* Court looked to the basis of the claim asserted and whether that needed expert testimony in order to prove the claim.

Similar to *Slaubaugh*, Global failed to obtain a boundary survey without the Plaintiffs' consent to essentially inspect the property to determine whether the purported easements actually existed to ensure the property was not landlocked. Plaintiffs allege that had this boundary survey been done, the lack of valid easements on the Covered Premises would have been made known and Plaintiffs would have been able to obtain a policy that covered any loss or damage as a result.

The Court reads Count IV of the Second Amended Complaint as stating a rather straightforward claims not requiring expert testimony. Count IV does not rely on industry standards or practices in the insurance agent industry. Count IV relates to what information was conveyed to North American. In addition, Count IV relates to the improper drafting of the description of the Covered Premises in a way that allowed North American to disclaims coverage. Therefore, it is reasonable to determine that an expert is not necessary in this instance to prove negligent procurement when Global initiated the inspection process to determine the insurance coverage needed for the property and may not have exercised reasonable care in relaying relevant information to North American.

So, like in *Slaubaugh*, Plaintiffs' claim is not that Global breach a standard of care in the insurance agent industry. Plaintiffs are asserting that Global, as procuring agent, failed to provide information to North American so the right policy could have been underwritten. As alleged, the Court finds that no expert testimony is needed. If Plaintiffs attempt to prove another case at trial, the Court can fashion an appropriate remedy at that time.

Global also argues that no such policy could be issued to prevent Plaintiffs' damages, which is necessary to establish negligent procurement. In *Slaubaugh*, the Court dismissed the claim of negligent procurement for the reason that State Farm did not issue policies to anyone covering snow-ice for customers; therefore, plaintiff could not show that alternative coverage was available. Here, Global contends that there is no policy available that would prevent Plaintiffs' harm and that the parties were all aware the Covered Premises was landlocked.

Plaintiffs argue that if everyone was aware that the Covered Premises was landlocked, then Global knowingly issued a void policy to Plaintiffs. Plaintiffs argue that had Global conducted a boundary survey, Plaintiffs would have allowed the claim for access issues to be included in the policy. Plaintiffs contend that Global cut corners by obtaining only the mortgage survey, without written consent from Plaintiffs, which did not include the markings for the metes and bounds of the property. A reading of the policy states that essentially anything that could have been discovered by an accurate boundary survey is not covered under the policy. Plaintiffs are claiming that Global failed to order an accurate boundary survey to uncover the access issues; therefore, Plaintiffs would have had coverage for their damages. Global argues that no such coverage exists.

The Court finds that factual issues remain in dispute as to whether Plaintiffs would have been able to obtain coverage under a policy for the access issues.

### THE STATUTE OF LIMITATIONS HAS NOT EXPIRED

The Court has already addressed the statute of limitation argument in the Dismissal Decision. The Court does not find that Global has provided any facts or information that would cause the Court to revisit and revise its earlier decision.

Under Delaware law, claims for negligence and professional negligence are subject to a three-year statute of limitations.[44] Courts apply a three-step analysis to determine whether a claim is time-barred.[45] First, the court determines when the cause of action accrues. Second, the court determines whether the statute of limitations may be tolled so that the cause of action accrues after the time of the breach.[46] The plaintiff must plead with specificity why the statute of limitations should be tolled.[47] Third, if a tolling exception applies, the court determines when the plaintiff received inquiry notice. [48] The statute of limitations begins to run from the date when the plaintiff received inquiry notice.[49]

Delaware courts have tolled the statute of limitations using the "time of discovery" rule. The "time of discovery" rule applies where the injury is (a) "inherently unknowable"; and (b) sustained by a "blamelessly ignorant" plaintiff.[50] In *Kaufman v. C.L. McCabe & Sons, Inc.*, the plaintiffs argued that the court should toll the statute of limitations using the time of discovery rule because the plaintiffs were not aware that their insurance policy was defective and the plaintiffs relied on the advice of a professional. The Supreme Court disagreed. The Supreme Court stated that "[a] party to a contract cannot silently accept its benefits and then object to its perceived disadvantages . . . ." The Supreme Court held that if the plaintiffs had read the insurance contract, the plaintiffs would have discovered the defects. So, the plaintiffs' injury was not inherently unknowable and the plaintiffs were not blamelessly ignorant. The Supreme Court therefore refused to apply the time of discovery rule to toll the statute of limitations.

---

[44] *Shandler v. DLJ Merch. Banking, Inc.,* 2010 WL 2929654, at n.88 (Del. Ch. July 26, 2010); 10 *Del. C.* § 8106.

[45] *Wal– Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004).

[46] *Id.*

[47] *Young & McPherson Funeral Home, Inc. v. Butler's Home Improvement, LLC*, 2015 WL 4656486, at *1 (Del. Super. Aug. 6, 2015); *Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *11 (Del. Ch. Nov. 27, 2013).

[48] *Wal– Mart Stores Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del.2004).

[49] *Id.*

[50] *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 832 (Del. 1992).

The Court determined in its prior decision that this case is distinguishable from *Kaufman* because in this case, the problems with the defective deed, the access easements, and the Policy are not obvious or inherently knowable. The defective deed and Policy did not clearly provide that no easement existed. Rather, they provided that a "common law" easement existed, which is what the Plaintiffs believed to be true. Additionally, Global failed to procure an amended Policy that protected Plaintiffs when the defect was purportedly correct in May 2015. Plaintiffs alleged here that they only learned of the lack of coverage when they sought the coverage under the Policy and were denied.

In *Pack & Process, Inc. v. Celotex Corp.*,[51] the Court found that problems with the plaintiff's roof were not technically inherently unknowable. But, the Court said that the plaintiff had no reason to be knowledgeable about the defects in his roof because the plaintiff had delegated the duty to inspect the roof to the defendant, and the defendant informed the plaintiff that he had fixed the roof implicitly concealed the defects in the roof. Under these facts, the Court found that the plaintiff was blamelessly ignorant of the problems with the roof because the plaintiff would have had to call another roof expert to check the work of the defendant in order to discover the defects. As such, the Court applied the time of discovery rule and tolled the statute of limitations until the time when the plaintiffs discovered the defects in the roof.

The Court, in the Dismissal Decision, determined that the reasoning in *Pack & Process, Inc.* is applicable here. In the Dismissal Decision, the Court noted that:

> [A] series of Delaware decisions support the principle that the Time of Discovery Rule may be applied in negligent procurement and malpractice cases especially as those claims relate to title defects.[52] The key here is not the issuance of the policy

---

[51] 503 A.2d 646, 650–51 (Del. Super. 1985).

[52] *Pioneer Nat'l Title Ins. Co. v. Child, Inc.*, 401 A.2d 68, 71-72 (Del. 1979); *Ruger v. Funk*, 1996 WL 110072, at *36 (Del. Super. Jan. 22, 1996) (discussing *Kaufman v. C.L. McCabe & Sons, Inc.* and still applying the Time of Discovery Rule as it relates to title defects); *see also Dickerson v. Rich*, 2001 WL 34083816, at *2 (Del. Super. Oct.

12

but the purported reason for its negligent procurement—i.e., a title defect as opposed to an omission of coverage.[53]

Here, Plaintiffs argue a title defect existed because a non-existent defect was included in the deed and Policy. Plaintiffs do not simply allege an omission of coverage. Plaintiffs allege that had Global ordered the proper survey and had not included the non-existent easement that the Surveyor warned did not provide access, Plaintiffs would have been covered under the Policy. There is email evidence and deposition testimony to suggest that Plaintiffs were skeptical about the access to the Covered Premises, which caused them to seek advice and assurance from their prior attorney Mr. Longo.[54] Mr. Longo assured them that the "common law" easement gave them access to the property and they were able to maintain the property along the easement. This information does not suggest Plaintiffs were definitively aware of access issues. This evidence, at this point, supports the notion that Plaintiffs were blamelessly ignorant and that the access issue was inherently unknowable to Plaintiffs because they delegated the duty to find easements to Global and Mr. Longo.

The Court also notes that the Decision creates the situation where negligent procurement may not even be an issue. If, at trial, Plaintiffs prevail on their claim against North American then Global will not have negligently procured the Policy. The Court holds that these types of factual disputes will be resolved at trial.

---

[footnote continued] 17, 2001) (stating that the Time of Discovery Rule applied in *Pioneer Nat'l Title Ins. Co.* was appropriate because title defects are, in most instances, "inherently unknowable").

[53] Transaction ID 63377617.

[54] Mot. at Exs. C, D.

**CONCLUSION**

For the reasons set forth above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 29, 2020
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

14